UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                            :
                                        Docket #20-cr-00163-
 UNITED STATES OF AMERICA,        : PKC-6

                  Plaintiff,      :

   - against -                    :

 GRASSO,                          : New York, New York
                                    November 10, 2020
                  Defendant.      :
                                    REMOTE PRESENTMENT
----------------------------------- :
```

PROCEEDINGS BEFORE
THE HONORABLE JUDGE DEBRA C. FREEMAN,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          UNITED STATES ATTORNEY'S OFFICE
                        BY:  SARAH MORTAZAVI, ESQ.
                        One St. Andrew's Plaza
                        New York, New York 10007
                        212-637-2520

For Defendant Allard:   COZEN O'CONNOR
                        BY:  STEPHEN A. MILLER, ESQ.
                        3 WTC, 175 Greenwich Street
                        Suite 55th Floor 10007
                        New York, New York 10007
                        212-883-4951

Also Present:           Pretrial Services Officer Rena Bolin


Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings conducted via tele conference and recorded by
electronic sound recording;
Transcript produced by transcription service

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|

None

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|

None

```
 1                          PROCEEDINGS               3

 2              THE CLERK:  United States v. Rene Allard.

 3              Counsel, please state and spell your name for the

 4   record.

 5              MS. SARAH MORTAZAVI:  Good morning, your Honor.

 6   This is Sarah Mortazavi for the government, S-a-r-a-h M-o-

 7   r-t-a-z-a-v-i.

 8              MR. STEPHEN MILLER:  And Stephen Miller for the

 9   defendant, Rene Allard. It's S-t-e-p-h-e-n M-i-l-l-e-r. And

10   the defendant's name is Rene, R-e-n-e; last name, A-l-l-a-

11   r-d.

12              HONORABLE DEBRA C. FREEMAN (THE COURT):   All

13   right, Mr. Allard, are you on the line?

14              MR. RENE ALLARD (THE DEFENDANT):  Yes.

15              THE COURT:  Okay.  Great. This is Judge Freeman.

16   Is there anyone else; do we have a Pretrial Services

17   representative?

18              MS. RENA BOLIN:  Good afternoon, your Honor.  This

19   is Rena Bolin calling in from Pretrial Services. R-e-n-a;

20   last name, B-o-l-i-n.

21              THE COURT:  Okay. Is there anyone else

22   participating in the call?

23              No.  All right. I just want to let everybody know

24   that, obviously -- maybe it's not obvious, but it seems at

25   this point it's obvious -- the reason we are proceeding
```

```
 1                              PROCEEDINGS              4
 2   this way, by remote means, is because we still have this
 3   pandemic that's going on.  And we'll be -- the telephone
 4   conference line, as I mentioned before we went on the
 5   record, is open to the public and the press on a listen-
 6   only basis. If you happen to be a member of the public or
 7   the press, please mute your line, please keep it on mute.
 8   For that matter, the other people who are participating, if
 9   you have the ability to mute your line when you're not
10   speaking, that might help us keep the sound quality a
11   little bit more clear.
12            All right, if you are participating today, please
13   speak one at a time. It's also really helpful if you state
14   your name each time you begin speaking. It's sometimes
15   difficult to distinguish different speakers just by voice.
16   And if for some reason anyone cannot hear something that's
17   being said, including you, Mr. Allard, please try to let us
18   know so we'll deal with any technological issues or repeat
19   what's said.  We want to make sure you can hear and
20   understand. Okay?
21            THE DEFENDANT:  Okay.
22            THE COURT:  All right. I have a Consent Form
23   that's been provided for defendant's consent to proceed by
24   video or telephone conference here -- this would be
25   telephone conference -- for presentment and for -- it is
```

```
1                         PROCEEDINGS              5
```

2   just for -- is it just for bail, or is it for presentment,

3   as well?

4           MS. MORTAZAVI:  This is Sarah Mortazavi for the

5   government. This is the first time the defendant is

6   appearing in this district on this Complaint.

7           THE COURT:  All right, I'm going to indicate on

8   the form, I'm just going to add in that it's not just for a

9   bail or detention hearing, which is how the form currently

10  reads, but also for an initial appearance, at least in this

11  court, initial appearance before a judicial officer;

12  because even if bail was set in another district, it has to

13  be considered here separately.

14          It looks like this form was signed by Mr. Miller

15  on behalf of himself and Mr. Allard. Mr. Miller, is that

16  right?

17          MR. MILLER:  That's right, Judge. Mr. Allard and I

18  are in different locations, and so I figured we would get

19  his consent by phone, so I went ahead and did the

20  electronic signature form.

21          THE COURT:  Okay. Can you tell me what opportunity

22  you had to speak with him with respect to this issue of

23  proceeding remotely today in order to obtain his consent.

24          MR. MILLER:  Sure. To make a record, we've talked

25  for many months, actually, about the dangers of appearing

```
 1                          PROCEEDINGS                  6

 2   in court in New York City right now and over the past

 3   several months, and that given a choice between an in-

 4   person hearing and either a video or telephone conference,

 5   that that would be the preferred way of proceeding, given

 6   current COVID circumstances.

 7            THE COURT:  Okay, did you explain to Mr. Allard

 8   that he has the right to be present in court with his

 9   lawyer right next to him?

10            MR. MILLER:  I did, yes.

11            THE COURT:  Okay, did you believe, based on your

12   conversation with Mr. Allard, that he understood that right

13   and was willing to give it up?

14            MR. MILLER:  Yes, I do.

15            THE COURT:  Okay.  We don't need an interpreter

16   for Mr. Allard, correct?

17            MR. MILLER:  I don't think so.  English is not his

18   first language, but he is pretty fluent. If he has

19   difficulty understanding the terms, he's usually pretty

20   good about letting us know.

21            And, Rene, I would encourage you to do that,

22   especially over the phone, where you can't read people's

23   lips.  Just speak up. No one is going to think twice about

24   it if you say you have trouble understanding.

25            THE DEFENDANT:  Okay.
```

```
 1                        PROCEEDINGS                  7

 2              THE COURT:  All right, Mr. Allard, if anything I

 3   say is confusing because it sounds like legal talk and it's

 4   not words or phrases or anything you're familiar with, just

 5   please say so, and I will try to explain to make sure you

 6   understand. And if at anytime you feel that you really do

 7   not want to proceed without an interpreter, let us know,

 8   and we will adjourn until we can get an interpreter to make

 9   sure you understand. Okay?

10              THE DEFENDANT:  Thank you.

11              THE COURT:  All right. And in talking to

12   Mr. Allard about his consent to proceed remotely, did you

13   feel you did not need an interpreter, Mr. Miller, for that

14   conversation?

15              MR. MILLER:  That's right, Judge. I've spoken to

16   Mr. Allard several times in the eight months that I've

17   known him, and we have never once encountered a situation

18   where he needed an interpreter.

19              THE COURT:  All right, so Mr. Allard, as I've

20   said, under normal circumstances, everyone would be

21   participating in this proceeding in the courtroom,

22   physically present.  And we're doing it this way out of

23   safety concerns because of COVID-19. I do want to make sure

24   that you are comfortable with that.  The form just

25   indicates -- the form that your lawyer signed for you
```

```
 1                          PROCEEDINGS                 8

 2  indicates that you voluntarily consent to proceed in this

 3  proceeding by telephone. Did you in fact discuss these

 4  issues with your attorney before today?

 5           THE DEFENDANT:  Yes.

 6           THE COURT:  And do you in fact agree to

 7  participate in this proceeding by telephone?

 8           THE DEFENDANT:  Yes.

 9           THE COURT:  And you agree to participate without

10  your lawyer being physically present next to you?

11           THE DEFENDANT:  Correct, yes.

12           THE COURT:  Okay. I find that defendant has

13  knowingly and voluntarily agreed to participate in this

14  proceeding by telephone after consultation with counsel,

15  and I'll accept the form signed on his behalf by counsel.

16           Now, the purpose of this proceeding today is to

17  inform you of certain rights that you have. It's also to

18  inform you of the charges against you, to decide whether

19  counsel should be appointed for you, and to decide the

20  conditions, if any, under which you will be or will remain

21  released.

22           With respect to your rights, you have the right to

23  remain silent. You are not required to make any statements.

24  Even if you have already made statements to the

25  authorities, you need not make any further statements.
```

```
 1                        PROCEEDINGS                      9
 2  Anything that you do say can be used against you.
 3            You have the right to be released, either with or
 4  without conditions, pending your trial, unless I find that
 5  there are no conditions that would reasonably assure both
 6  your presence in court and the safety of the community.
 7            You have the right to be represented by counsel
 8  during all court proceedings, including this one; and also
 9  during any questioning by the authorities.  If you cannot
10  afford an attorney, you're entitled to have the Court
11  appoint counsel to represent you.
12            I understand that Mr. Miller is retained counsel,
13  so I'm just going to tell you that, if at anytime you feel
14  you are unable to continue to afford counsel, you may
15  return to the Court and make an application to have counsel
16  appointed.
17            You have been charged in a Complaint with a
18  violation of Title 18 of the United States Code
19  Section 371, which makes it a crime to conspire with others
20  to commit offenses against the United States, here
21  specifically to violate Title 21 of US Code Sections 331
22  and 333(a)(2), which make it a crime to defraud, mislead
23  and introduce and deliver for introduction into interstate
24  commerce drugs that are either adulterated -- that are
25  adulterated and misbranded. This crime as charged carries
```

```
 1                          PROCEEDINGS              10
 2  with it a number of possible sanctions, including possible
 3  jail time.
 4          Mr. Miller, have you had a chance to review --
 5  read and review the Complaint with Mr. Allard?
 6          MR. MILLER:  Yes, Judge, I have.
 7          THE COURT:  Okay, did you have the benefit of an
 8  interpreter if you needed one, or can you give assurance
 9  that you did not need one?
10          MR. MILLER:  We did not use an interpreter because
11  in all of our conversations and interactions I never felt
12  that one was necessary. Mr. Allard was following along and
13  speaking clearly back to me in English. But if he, you
14  know, as we've said several times to him, if he ever felt
15  that he needed something interpreted, he should speak up.
16  And we have a very comfortable relationship now; I expect
17  he would have done that if he wasn't able to understand
18  something.
19          THE COURT:  All right, do you waive the reading of
20  the Complaint on Mr. Allard's behalf?
21          MR. MILLER:  Yes, we do --
22          THE COURT:  Public reading? Okay.
23          All right, Mr. Allard, because you have been
24  charged in a Complaint, you also have the right to a
25  Preliminary Hearing at which the government would have the
```

1                            PROCEEDINGS                    11

2  burden of establishing that there is probable cause to

3  believe that the crime for which you're being charged has

4  been committed and that you are the person who committed

5  it. If probable cause is not established, you'd be released

6  from the charge. If it is established, the government would

7  then have the right to proceed to trial against you. If

8  after this proceeding today you are being held in custody,

9  you would have the right to have this Preliminary Hearing

10 held within two weeks, 14 days. If you are not in custody,

11 then the Preliminary Hearing need only be held within three

12 weeks or 21 days. You should also understand, though, that

13 there will not be any Preliminary Hearing at all if at some

14 point before the date when it's scheduled, you are either

15 indicted by a grand jury or what's called a criminal

16 Information is filed against you by the government. I'll

17 set the Preliminary Hearing date here after I determine the

18 question of bail.

19          I understand from counsel -- I think this was said

20 just before we got on the record -- that the parties have a

21 proposed bail package, is that right, counsel?

22          MS. MORTAZAVI:  This is Sarah Mortazavi for the

23 government. Yes, your Honor, that's correct.

24          THE COURT:  All right, I have the original report,

25 Pretrial Services Report, out of, I believe it was Nevada

```
 1                          PROCEEDINGS              12
 2   or some place.
 3              MS. MORTAZAVI:  That's correct, your Honor.
 4              THE COURT:  And I have an addendum to that report
 5   from the Southern District of New York.  The addendum on
 6   page 3 contains a recommendation.  Can you tell me the
 7   extent to which your proposal matches that or differs?
 8              MS. MORTAZAVI:  Yes, your Honor. Sarah Mortazavi
 9   again for the record. Our proposed package matches that
10   with three changes or additions that I can list now.  The
11   first is to enter a --
12              THE COURT:  Well, first of all, is there an amount
13   of a bond that you're proposing?
14              MS. MORTAZAVI:  Yes, that's one of our proposals,
15   which is a $100,000 bond.
16              THE COURT:  Okay. Are you still looking for one
17   cosigner?
18              MS. MORTAZAVI:  That's correct, your Honor.
19              THE COURT:  Okay, so why don't you walk me through
20   the rest?
21              MS. MORTAZAVI:  And this then leaves only one
22   clarification, which is that the parties would agree to add
23   a condition that the defendant will report criminal charges
24   to -- these criminal charges to any licensing authorities
25   where he holds an active or suspended license.
```

1                          PROCEEDINGS                    13

2             THE COURT:  Defendant will report this criminal

3    charges to -- say that again more slowly and let me type.

4             MS. MORTAZAVI:  Sure. To any licensing authority

5    where he holds an active or suspended racing license.

6             THE COURT:  Okay. Let me go through the conditions

7    that I have here. And I actually would like some

8    clarification on a couple of them.  So I have travel

9    restricted to Southern and Eastern Districts of New York,

10   Middle District of Pennsylvania, Southern District of

11   Florida. And, Mr. Allard, obviously, you have to go through

12   other states in order to get to those states.  To get from

13   New York to Florida, you obviously would, you know, either

14   go through or fly over other states. You're permitted to be

15   in those other states only for purposes of getting from one

16   of these places to another and not to dwell anywhere else.

17   All right?

18             THE DEFENDANT:  Okay.

19             THE COURT:  I have surrender of any travel

20   documents, any passports, if it's not already been

21   surrendered; no new applications for any new passports;

22   pretrial supervision as directed by Pretrial Services;

23   defendant to continue or seek employment.  And then I have

24   defendant to maintain residence and not relocate without

25   Pretrial Services' consent; defendant to have no contact

```
 1                          PROCEEDINGS                    14

 2   with codefendants. Do we have codefendants here? Who are

 3   the codefendants? I only see one name on the Complaint.

 4            MS. MORTAZAVI:  Sarah Mortazavi for the government

 5   again. Thank you for pointing that out, your Honor. For

 6   clarification, Mr. Allard was arrested in connection with a

 7   number of other cases that the government unsealed around

 8   the same time of the arrest, and he has had close contact

 9   with the defendants in one of those cases in particular

10   that is 20-crim-163, United States v --

11            THE COURT:  I'm sorry, 20-crim -- what's the

12   number?

13            MS. MORTAZAVI:  One six three.

14            THE COURT:  Okay.

15            MS. MORTAZAVI:  That's a case that currently has

16   five codefendants, and it's captioned United States

17   v. Grasso.  And we would clarify that the restriction

18   should prohibit any contact with the codefendants in that

19   matter unless in the presence of counsel.

20            THE COURT:  Is that the only other matter?

21            MS. MORTAZAVI:  That's right, your Honor.

22            THE COURT:  Okay. Defendant to have no contact

23   with defendants in US v. Grasso, 20-crim-163, unless in the

24   presence of counsel. Defendant not to use or obtain any

25   adulterated or misbranded prescription drugs for his
```

1                              PROCEEDINGS                    15

2   business. I have a question about whether he would

3   necessarily know if a veterinarian provides a prescription

4   that's adulterated, how he would know that it's

5   adulterated. Is it a particular doctor who you're saying he

6   should not deal with or -- and then I have questions about

7   the other two conditions, as well, that Pretrial Services

8   suggests.

9           It says no contact with race horses without

10  supervision of third-party owner business. I'm not sure

11  what that means, "supervision of third-party owner,"

12  whether that means the third-party owner is going to be

13  supervised by Pretrial Services or is supposed to be

14  supervising the defendant or just, you know, be kept in the

15  loop about drugs in particular or something.

16          And then the last point about horses not be

17  entered in any race. If he's training the horses and

18  doesn't own the horses, how does he control whether the

19  horses are -- whether the owner makes a decision to race

20  one of these horses? How can this order extend to the owner

21  of the horses themselves?

22          MS. MORTAZAVI:  I'm happy to address each of

23  those, your Honor. On the question on the adulterated or

24  misbranded prescription drugs, perhaps we could add that

25  the defendant shall not knowingly use or obtain any

```
 1                          PROCEEDINGS                    16

 2    adulterated or misbranded prescription drugs. One of the

 3    veterinarians that this defendant used is actually an

 4    indicted defendant in United States v. Grasso, and so we

 5    don't expect that they'll have communications seeking

 6    prescription drugs. But with respect to behavior that would

 7    be similar to that of his relationship with that

 8    veterinarian, I think as long as the defendant is not

 9    knowingly seeking out prescription drugs that are being

10    given to him illegally, that certainly covers the

11    government's concern there.

12              THE COURT:  Okay. I would just add for clarity

13    that "knowingly," Mr. Allard, would include -- to my mind

14    would include sort of deliberate, like closing your eyes to

15    something that you think is possibly true but making

16    believe that, well, you know, I'm not asking so -- I'm not

17    asking and he's not telling me, so therefore I don't know.

18    I mean, you know, deliberate blindness is something that

19    can be covered by "knowing." All right?

20              Ms. Mortazavi, is that clarification useful, or is

21    there something that you think I should put in writing on

22    that? I mean it --

23              MS. MORTAZAVI:  I believe that clarification is

24    helpful, your Honor.  And I understand from my

25    conversations with Mr. Allard's defense counsel that he
```

```
 1                         PROCEEDINGS                    17
 2   understands the contours of avoiding misbranded or
 3   adulterated prescription drugs.
 4         THE COURT:  Okay.  So I'm just going to say
 5   "knowingly" on the disposition sheet.
 6         All right, can we move onto this question about
 7   supervision of third-party owner?
 8         MS. MORTAZAVI:  Yes. Perhaps it would make more
 9   sense to replace "supervision" with "presence of third-
10   party owner of premises where the race horse is located."
11   And the purpose of that is it works in tandem with the
12   final condition, which is to restrict the defendant's
13   ability to potentially administer drugs that should not be
14   administered to race horses, the theory there being if
15   there's a nominee of the premises who is detached and who
16   is present at the time he is with those race horses, it
17   reduces the likelihood that any prohibited drugs would be
18   administered.
19         THE COURT:  Okay, so I don't know that much about
20   training of horses, but in my mind's eye the owner might be
21   sleeping, and there might be an early -- you know, the
22   trainer takes the horse out somewhere to run at some early
23   hour of the morning or something, is the owner -- does it
24   make sense to have the owner present for every type of
25   training at all hours all the time? I mean, you know, if
```

PROCEEDINGS                    18

1

2  you're saying no contact with race horses outside the

3  presence of the owner, is that realistic in terms of how

4  horse training is done?

5          MS. MORTAZAVI:  For larger training facilities,

6  your Honor, it can be realistic. In these facilities that

7  have, you know, hundreds of horses in them, many employees,

8  around-the-clock security, it actually is possible to have

9  that level of supervision. I believe Mr. Allard does not

10 intend to have any contact with race horses -- and

11 Mr. Miller can correct me on that. So if there is a

12 proposal to --

13         THE COURT:  Could it be --

14         MS. MORTAZAVI:  -- make this a simpler

15 restriction --

16         THE COURT:  Could it be no contact with race

17 horses outside the presence of third-party owner or

18 delegated representative of the owner?

19         MS. MORTAZAVI:  That's certainly fine from the

20 government's perspective.

21         THE COURT:  Mr. Miller, do you want to speak to

22 this at all?

23         MR. MILLER:  No. I think your suggestion is fine.

24 It alleviates any burden on the owners themselves if they

25 want to delegate a representative for those early-morning

| | PROCEEDINGS                                      19 |

```
 1          sessions.

 2                  But, Judge, just for context, after Mr. Allard's

 3          arrest in March, his license was suspended and essentially

 4          the government has destroyed his ability to make a living

 5          in racing, in entering horses in racing.  So some of this

 6          appears academic because -- and I certainly appreciate the

 7          Court's effort for clarity -- but I just want to give you

 8          the context that it is almost impossible for Mr. Allard to

 9          train horses that will be entered in races in the various

10          state racing commissions.

11                  THE COURT:  Well, can I change the proposal of

12          Pretrial Services that says, "Horses under his training are

13          not to be entered into any race," to say that, "Defendant

14          is not to train any horses known to be," I don't know,

15          "race eligible," or something like that or --

16                  MR. MILLER:  The difficulty there, Judge -- this

17          is Mr. Miller -- the difficulty is that, I mean, I know in

18          theory every horse from the moment it's born --

19                  THE COURT:  Or known to be --

20                  MR. MILLER:  -- could be eventually -- right.

21                  THE COURT:  Or known to be -- known to -- I'm not

22          sure grammatically -- but "being entered in races," or

23          something.

24                  MR. MILLER:  Yeah, that's what I was going to head
```

```
 1                         PROCEEDINGS                20
 2   toward also, Judge, maybe, "may not train horses that are
 3   entered in racing competitions." I'm not sure if that gets
 4   the government --
 5             THE COURT:  Or entered in or where he knows that
 6   there's a plan to enter them in, or something like that?
 7             MR. MILLER:  Well, the reason I'm afraid of that,
 8   Judge, is that Mr. Allard has the opportunity -- it's one
 9   of the only ways he can survive -- is by caring for young
10   horses. So not horses that are entered in racing
11   competitions.  And we discussed this with the government.
12   My understanding is they are okay with those kinds of
13   training and basically caring for horses.
14             Where the government's interest becomes acute is
15   when those horses are actually entered in racing
16   competitions and the concern is on the integrity of the
17   betting and the racing markets.  And so I'm afraid if
18   you --
19             THE COURT:  So, "Defendant not to train" --
20   "Defendant not to train horses entered in any races"?
21             MR. MILLER:  Yeah, that's sort of what I would
22   prefer because it's clear and it doesn't -- that last
23   phrase that you were considering, "eligible to be entered,"
24   just to me starts to get a little fuzzy.
25             THE COURT:  Ms. Mortazavi, what do you think of,
```

```
 1                        PROCEEDINGS              21
 2  "Defendant not to train horses entered in any races"?
 3            MS. MORTAZAVI:  There's no objection to that
 4  language, your Honor.
 5            THE COURT:  Okay. My concern, separate and apart
 6  from the integrity of the betting and things like that,
 7  from reading the Complaint, my concern was the health and
 8  well-being of the horses, as there seemed to be some
 9  indication that horses were being harmed by medication and
10  that they could be at increased risk of injury while
11  racing. So, you know, maybe if that's where the harm is
12  most acute, if a horse is being particularly prepped for a
13  race or is being entered into a race, maybe that is where
14  the potential harm to the horses is most acute.
15            MR. MILLER:  And, also, Judge, that's where you've
16  got that other condition that says that he's not allowed to
17  knowingly acquire --
18            THE COURT:  Right.
19            MR. MILLER:  -- misbranded drugs.  And so I think
20  you're getting at that interest through another condition.
21            THE COURT:  All right. Okay, so if that's
22  everything, I will accept it. Let me go over that in its
23  entirety.
24            Mr. Allard, I'm going to go through these
25  conditions.  And, please, if you don't understand
```

```
 1                          PROCEEDINGS                  22
 2  something, please -- this is important -- for you to say
 3  so. Okay?
 4          THE DEFENDANT:  Okay.
 5          THE COURT:  All right, so you'll be released on
 6  your own signature -- oh, actually, we didn't talk about
 7  whether you're looking for all conditions to be met prior
 8  to release.  Are you looking for the cosigner to sign
 9  later?
10          MS. MORTAZAVI:  This is the government.  We would
11  ask for two weeks to comply with all conditions but for the
12  defendant to be released on his own signature.
13          THE COURT:  All right. Two weeks is November 24.
14          Okay. His passport's already turned over, is that
15  right? Have --
16          MR. MILLER:  That's right, Judge, it was -- I'm
17  sorry to interrupt -- that's right; it was turned over in
18  Nevada.
19          THE COURT:  Does he have two passports? Does he
20  have two country passports?
21          MR. MILLER:  I don't believe so. He turned over
22  his Canadian passport in Nevada. He's a green card holder.
23          THE COURT:  So he does not have a US passport?
24          MR. MILLER:  Right.
25          THE COURT:  All right. Mr. Allard, you'll be
```

1                              PROCEEDINGS                        23

2    released on your own signature on a $100,000 personal

3    recognizance bond. That means that you don't have to lay

4    out that money, but if you do not appear, then you could be

5    responsible for that $100,000. In addition, that bond will

6    have to be cosigned by one financially responsible person

7    within two weeks of today, by November 24.

8              Your travel will be restricted to the Southern and

9    Eastern Districts of New York, the Middle District of

10   Pennsylvania, and the Southern District of Florida, with

11   points in between just for purposes of travel between

12   those.

13             I understand you've already surrendered your

14   Canadian passport. You may not apply for any new passport

15   at this time.

16             You'll be subject to pretrial supervision as

17   directed by Pretrial Services. Is there -- let me just ask

18   Pretrial, are you looking for defendant to submit to

19   urinalysis just in case?

20             MS. BOLIN:  Your Honor, there is no -- he reported

21   no history of substance abuse, so we are not specifically

22   recommending that. Should your Honor order a --

23             THE COURT:  I thought you generally, if someone's

24   released, say, you know, do one drug test. If it's

25   negative, fine; if by any chance it comes out positive,

1                          PROCEEDINGS                    24

2  then we learn something.

3            MS. BOLIN:  I think generally, if they have some

4  sort of history but have been clean for a long period of

5  time, we would request an initial UA. But it doesn't appear

6  as though this defendant has a history of substance abuse

7  at all.

8            THE COURT:  Okay. All right. And the government's

9  view on that? Not even looking for a single drug test.

10           MS. MORTAZAVI:  This is Sarah Mortazavi for the

11  government. No, your Honor, I don't believe there's any

12  indication that Mr. Allard has been abusing substances

13  himself. Of course, the government accedes to whatever the

14  Court believes is best on this score.

15           MR. MILLER:  Judge, even though this is his first

16  appearance here, it's worth noting that he's been on

17  supervision for now almost eight months with no incident

18  and no violations. And as his Pretrial officer has reported

19  to the Southern District, I believe in the last couple of

20  days, this is not someone that runs that risk for the

21  Court.

22           THE COURT:  Did he have a drug test in Nevada?

23  Does anybody know?

24           MR. MILLER:  I can go back and look at the report.

25  I don't recall. I would think he would have, just in the

```
 1                          PROCEEDINGS              25
 2  normal course.
 3            MS. MORTAZAVI:  This is Sarah Mortazavi for the
 4  government. I'm attempting to review the information on the
 5  bond in Nevada to see if one was ordered.
 6            THE COURT:  Well, I'll keep going in the meantime.
 7            You are, Mr. Allard, to continue your employment
 8  or seek employment if you need to and if you lose current
 9  work. You are to maintain your residence, not relocate
10  without Pretrial Services' consent. In other words, if you
11  want to move from the place where you've told Pretrial
12  Services you're living, you have to let them know, and they
13  have to approve any change in where you were living.
14            THE DEFENDANT:  Okay.
15            THE COURT:  You are not to have any contact with
16  the defendants in this other case, US v. Grasso, unless you
17  are in the presence of counsel. You are not -- you are not
18  to knowingly use or obtain any adulterated or misbranded
19  prescription drugs for business -- I would say "at all,"
20  but the condition says "for business."
21            You are not to have any contact with race horses
22  outside the presence of a third-party owner of the premises
23  or a delegated representative of the owner where the race
24  horse is located of the premises.  Let me say that again.
25  Not to have any contact with race horses outside the
```

```
 1                        PROCEEDINGS                26
 2   presence of a third-party owner or delegated representative
 3   of the owner of the premises where the race horse is
 4   located.
 5            You are not to train horses entered in any races.
 6            You are to report these criminal charges in this
 7   case to any licensing authority where you hold an active or
 8   suspended racing license.
 9            Ms. Mortazavi, did you figure that out?
10            MS. MORTAZAVI:  Yes, your Honor. It does not
11   appear that there was any drug testing required by Nevada.
12            THE COURT:  All right. I'm going to skip it. I
13   don't usually do that, but I'm going to skip it, given the
14   length of time that he's been under supervision so far. I
15   would think that if there were any concerns there, that
16   they would have sought a drug test.
17            So I just want to -- I do want to caution you,
18   Mr. Allard, that if you are out and you violate any of
19   these conditions, not only could you be responsible for --
20   well, certainly, if you do not appear when you're supposed
21   to or if you otherwise violate conditions, not only could
22   you be responsible for the $100,00, and also whoever
23   cosigns the bond with you could be responsible for the
24   $100,000, but you could have separate charges brought
25   against you, certainly for jumping bail if you do not
```

PROCEEDINGS                    27

1  
2  appear.  That could be separately prosecuted, even if these

3  charges were to be dismissed.  Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Okay. All right. Preliminary Hearing

6  date, counsel?

7            MS. MORTAZAVI:  This is Sarah Mortazavi for the

8  government, your Honor.  The parties have been using the

9  defendant's initial appearance in Nevada as the operative

10  date for scheduling the Preliminary Hearing deadline and

11  have already entered into a number of continuances.  We

12  would ask that the Court, consistent with the most recent

13  court order from this district, set a Preliminary Hearing

14  date of December 4th, which is a Friday.

15            MR. MILLER:  And that's fine with us, Judge.

16            THE COURT:  Okay, that's within 30 days, so that's

17  fine.

18            I neglected to ask for date and time of arrest. He

19  was, I gather -- hold on one second, let me just see if I

20  can modify this disposition sheet -- I gather that

21  Mr. Allard was arrested elsewhere.  When was it that he was

22  originally arrested?

23            MS. MORTAZAVI:  He was originally arrested on

24  March 12th in Nevada, your Honor.  And this is his initial

25  appearance in this district.

```
 1                        PROCEEDINGS                    28

 2              THE COURT:  He arrived here today? Was he

 3   voluntary here?

 4              MS. MORTAZAVI:  He's not physically present in the

 5   district, your Honor, but we have --

 6              THE COURT:  Oh, okay.

 7              MS. MORTAZAVI:  -- as you know, scheduled this

 8   remotely to get this within this district and before a

 9   judge here.

10              THE COURT:  So is defendant still in Nevada?

11              MS. MORTAZAVI:  The defendant has relocated to the

12   Middle District of Pennsylvania and is currently

13   contemplating a move to the Southern District of Florida.

14   But for purposes of COVID-19, we have been speaking with

15   Mr. Miller on behalf of Mr. Allard, and I understand there

16   are health concerns with him traveling physically to this

17   district.

18              MR. MILLER:  That's right. Just again for context,

19   Judge, Mr. Allard was on vacation in Las Vegas. His

20   residence has been for a long time in the northeastern part

21   of Pennsylvania, and he travels into the state of New York

22   for work.  That farm is being sold, and he needs to

23   relocate to the Southern District of Florida for the

24   winter.  And that was -- we were planning just to do the

25   travel, the restriction, the enlargement of the travel
```

```
 1                        PROCEEDINGS               29
 2  restrictions; but it became clear that he needed to make an
 3  appearance here, not in Nevada again.  And so that's how we
 4  find ourselves before the Court.
 5           THE COURT:  Okay. I also didn't note what time
 6  this presentment starts. Aisha, what time did we start this
 7  today?
 8           THE CLERK:  Maybe about 11:50, 37 minutes ago.  So
 9  what's that, 11 --
10           THE COURT:  I'll put 11:50. Okay. Close enough.
11           Is there anything else?
12           MS. MORTAZAVI:  Nothing from the government. Thank
13  you, your Honor.
14           MR. MILLER:  Nothing from Mr. Allard. Thank you
15  for your consideration, Judge.
16           THE COURT:  All right. You're welcome.  Take care.
17  Bye.
18           Oh, you know what? This is a case that's on a
19  Complaint, not an indictment at this point or an
20  information.  And so I think the word now from this Court
21  is that we're not going to consider this the first
22  scheduled appearance as referred to in this newly amended
23  Rule 5F about the government's Brady obligations and the
24  Court's requirement to make clear to the government that it
25  has these Brady obligations.
```

```
1                        PROCEEDINGS                   30
2              So I'm just going to say very briefly that the
3   government is ordered to comply with its disclosure
4   obligations under Brady v. Maryland and its progeny.  And
5   there are possible consequences of violating this
6   obligation. I believe that the first judge who sees the
7   defendant, if the case is indicted or if there's a waiver
8   of indictment, will be the judge who will issue the written
9   order that the rule contemplates. That rule contemplates
10  setting out the potential consequences for violating that
11  obligation, including consequences like dismissal of the
12  charges and sanctioning of any responsible lawyer for the
13  government. But I do not believe I need to set out that in
14  a written order today. So that's my plan not to; but if
15  anyone thinks otherwise, they think that I should, please
16  let me know. All right?
17             MR. MILLER:  Thank you, Judge. I think the
18  verbal's fine.
19             MS. MORTAZAVI:  Thank you, your Honor.
20             THE COURT:  All right. Take care, everybody.  Be
21  well.
22             (Whereupon, the matter is adjourned.)
23
24
25
```

31

C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of USA v. Grasso, Docket #20-cr-00163-PKC-6, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

              Carole Ludwig

Date:    April 8, 2021